Original, Oct. 10, 1950. } No. 3984.

JOSEPH G. COLBY *v.* J. VINCENT BRODERICK & *a.*

*Upton, Sanders & Upton* (*Mr. William D. Tribble* orally), for the plaintiff.

*George R. Grant, Jr.*, Assistant Attorney General (by brief and orally), for the defendant Ballot-Law Commission.

*James C. Cleveland* (by brief and orally),for the defendant George W. Philbrick.

KENISON, J. The main issue in this case is whether the Ballot-Law Commission has jurisdiction under Laws 1947, *c.* 211 to decide an objection to the nomination of a candidate for county commissioner in a primary election. We rule in this case only on the question of statutory construction presented to us without reaching the abstract question of whether, when or to what extent this court has judicial power over questions of law decided by the Ballot-Law Commission.

Prior to July, 1948, the Ballot-Law Commission was empowered to decide all objections to and all questions arising out of primary nominations "and their decision shall be final." R. L., *c.* 33, *s.* 97. In determining the legislative intent of this quoted phrase it was construed as meaning "final only as to questions of fact." *O'Brien* v. *Fuller*, 93 N. H. 221, 227; *Nelson* v. *Morse*, 91 N. H. 177. The 1947 Legislature expressly repealed this statute and "any other statutes inconsistent with this chapter . . . to the extent of such inconsistency." Laws 1947, *c.* 211, *s.* 2. The Ballot-Law Commission was invested with additional powers, duties and functions (Laws 1947, *c.* 211, *s.* 1) which now appear as a new chapter in the Revised Laws (R. L., *c.* 34-A). When the Legislature makes a revision of the subject matter of a statute and by the new statute designs a complete scheme, so much of the former statutes as are not mentioned, although not expressly repealed, are to be deemed to be superseded. *Attorney-General* v. *Hunter*, 92 N. H. 206.

The completeness and enlargement of the new powers and authority of the Ballot-Law Commission are evident from the express provisions of R. L., *c.* 34-A itself. Section 3 I directs that "the ballot-law commission shall forthwith meet, hear and decide all" primary objections filed with it. This section contains no limitation on the nature of the objections. Then follows the following definitive provision:

"The decision of the ballot-law commission shall be final as to questions both of law and fact, and no court shall have jurisdiction to review such decision." One does not have to labor the point that this is forceful language clearly expressed. "In most English words and phrases there lurk uncertainties," (*Robinson* v. *United States*, 324 U. S. 282, 286) but it is difficult to find one in that part of the statute. However the 1947 Legislature went further to make assurance doubly sure by providing in *s.* 3 III that the jurisdiction of the Ballot-Law Commission over objections to primary nominations "shall be exclusive of all other remedies."

An examination of the legislative history of House Bill 252, which resulted in the present law shows no intent or attempt to limit or restrict the enlarged powers and jurisdiction of the commission. Senate Journal *p.* 358 (1947); House Journal *p.* 1017 (1947). This is competent evidence of the legislative intent to give the Ballot-Law Commission quasi-judicial powers of wide scope to settle primary disputes to the fullest extent that the law will allow. *State* v. *Nadeau*, 81 N. H. 183, 185; *Opinion of the Justices*, 66 N. H. 629, 645. This view is also supported by *s.* 11 which allows appeals to the Supreme Court on questions of law in certain election disputes as distinct from primary disputes.

From the nature of things there is an inflexible timetable applicable to primary election disputes if ballots are to be prepared, printed and delivered in time for the November election. The time interval between the primary and the election is of shorter duration than formerly existed in previous years. The time factor is made more acute if consideration is given to war ballots and absentee ballots some of which must be delivered to and returned from far away places. These factors are well known to the Legislature and are some evidence to indicate a legislative intention to establish the Ballot-Law Commission as "a special tribunal for the determination of . . . [primary disputes] which would act expeditiously, and without the delays ordinarily incident to judicial procedure." *Attorney-General* v. *Sands*, 68 N. H. 54, 57.

Considering R. L., *c.* 34-A in its entirety and its legislative history and purpose, it confers jurisdiction on the Ballot-Law Commission over this primary dispute unless it can be said that the plaintiff has waived his rights by failing to resort to other statutory remedies.

R. L., *c.* 32, *s.* 12a as inserted by Laws 1943, *c.* 11, permits any citizen to apply to the Superior Court to determine whether the name of a voter should be "added to or removed from the checklist." This

statute, which applies to annual local elections as well as to primaries and biennial elections, was enacted for the purpose of correcting errors on the part of the supervisors of checklists. *McGee* v. *Bragg*, 94 N. H. 349. The emphasis of the statute is on the right to vote rather than on the right to be elected or the right to hold office. "If ordinarily the qualifications for voting and for being voted for are the same, a finding that one is or is not qualified to vote is not *res adjudicata* in a proceeding to determine the right to hold office. . . . The issue of his right to be voted for is therefore undetermined and is unaffected by anything done in respect to his right to vote." *Atwood* v. *Berry*, 87 N. H. 331, 334. A person may be resident in a town which entitles him to vote for state senator but that does not determine whether he may be voted for as a state senator which requires citizenship, seven years residence in the state and a minimum age of thirty years. *Barker* v. *Young*, 80 N. H. 447. There is nothing in this statute which precludes the Ballot-Law Commission from considering objections to primary elections based on the qualifications of the nominated candidate. It is suggested that these matters should be questioned before the primary campaigns rather than after thus avoiding much needless waste of time, money and energy. If this is a desirable dictate of political sportsmanship, it should be determined in the legislative arena rather than in a judicial forum.

Attention is directed to R. L., c. 45, s. 6, which relates to the contest of county office elections. "The superior court shall issue a certificate of election to the candidate who is found on such proceeding to be elected." This relates to elections and not to primaries and has been so construed. *Stearns* v. *O'Dowd*, 78 N. H. 358; *Eastman* v. *McCarten*, 70 N. H. 23. That is why although R. L., c. 34-A, s. 4 II and s. 11 provide for an appeal from the Ballot-Law Commission in case of an election recount for certain offices, no reference is made to county offices. R. L., c. 45, s. 6, has no application to the present proceeding.

In summary, the Ballot-Law Commission had jurisdiction of the written objection filed with it by the plaintiff who has not waived his right by failing to resort to a determination by the supervisors of the checklist or the Superior Court. It is assumed that no formal mandatory order is necessary other than the present opinion which is rendered by virtue of R. L., c. 369, s. 2. A mandatory order to the Ballot-Law Commission to exercise its statutory duties is not the exercise of "jurisdiction to review" its decisions within the meaning of R. L., c. 34-A, s. 3 I. The following quotation from a somewhat

similar case is pertinent. "It is essential that a decision be rendered speedily if it is to be of any practical use. Because of this situation, there is no occasion to consider whether" a clearly erroneous decision of the Ballot-Law Commission would be "correctible by the court." *Barker* v. *Young*, 80 N. H. 447, 450.

*Case discharged.*

All concurred.